# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

**PAUL BLACK** and
**DANIEL ALLEN JOHNSON,**
on behalf of themselves and all other
similarly situated individuals,

**CLASS REPRESENTATION**
**Case No. 3:09-cv-00502-TJC-JRK**

      **Plaintiffs,**

**v.**

**WINN-DIXIE STORES, INC,**
a Florida Corporation,

      **Defendant.**

_____/

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' CONSENTED MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

COME NOW the Plaintiffs, by counsel, and in support of their Consented Motion for

Preliminary Approval of Settlement, they state as follows:

## I.
## INTRODUCTION

Paul Black and Daniel Allen Johnson ("Plaintiffs") commenced litigation (the

"Litigation") against Defendant Winn-Dixie Stores, Inc. ("Winn-Dixie" of "Defendant") on June

5, 2009. The parties have now reached a settlement of class claims after extended formal

mediation.  They now ask the Court to preliminarily approve the settlement, proposed class

notices and schedule for formal consideration of the fairness and adequacy of the proposed

disposition after notice.

The Proposed Settlement was the product of arm's-length negotiations between

experienced counsel that took place after over a year of litigation, both formal and informal

discovery, and multiple negotiation sessions, in person and by telephone with a private mediator,

1

Hunter Hughes in Atlanta, Georgia, as well as in multiple additional sessions solely between the parties.   As explained below, the Settlement is an excellent result for the Classes in that it provides relief of genuine value without the risks of extended litigation.   Pursuant to the Federal Rules of Civil Procedure, the Plaintiffs, with Defendant's consent, move the Court to (1) grant preliminary approval to the Proposed Settlement, (2) approve the Proposed Class Notices, (3) order that the Notices be distributed to Class Members, (4) approve the hiring at Defendant's expense of a Notice Administrator, and (5) set the Final Approval hearing.

## II.
## CASE BACKGROUND

### A.    Plaintiffs' Claims

Plaintiffs filed a Class Action Complaint in the Litigation that alleged that Winn-Dixie violated the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*; specifically 15 U.S.C. §§ 1681b(b)(2)(A) and 1681b(b)(3)(A).   They alleged that Winn-Dixie used their and other putative class members' consumer reports in processing employment applications without providing timely notice under the FCRA of its intent to do so.   The Plaintiffs alleged that the FCRA requirement that notice be delivered "before" taking an adverse action required at least five business days to be reasonable and thus lawful. Plaintiffs also alleged Defendant's use of their reports was unlawful as Winn-Dixie did not obtain their authorization and provide related disclosures in the manner the FCRA requires.

Winn-Dixie denies these allegations generally and specifically.

### B.    The State of Litigation and the Settlement Negotiations

The Parties conducted both formal and informal discovery early in this matter.   Winn-Dixie documents were produced and Plaintiffs' own evidence was disclosed.   Discovery was

US2008 1663174.1

sufficiently significant and complete for Plaintiffs to then agree to commence settlement discussions and mediation.

Thereafter, the Parties engaged in productive and extended settlement talks. The negotiations leading up to this Settlement began on March 2, 2010, with an in-person mediation before Hunter Hughes in Atlanta, Georgia. After the in-person mediation, the Parties continued to discuss the possibility of settlement. In addition to litigation counsel, management representatives of Winn-Dixie also attended at least one of these sessions in person. The basic terms of settlement were negotiated directly with the Mediator and took at least a full day of his involvement and supervision. Settlement was hard-fought and negotiated between informed opponents otherwise at odds for the entire litigation.

The Parties now ask the Court to preliminarily approve the Proposed Settlement and authorize distribution of Settlement Notices to the Classes.

**C.      Proposed Settlement and Release Terms**

The principal terms of the Proposed Settlement Agreement, attached as Exhibit 1, are:

**1.      The Classes Defined**

*a.      Damages Settlement Class.* The "Damages Settlement Class," is defined to include:

> All consumers residing in the United States who, between June 1, 2007 and February 8, 2008: (i) were employed by Defendant; (ii) were the subject of a post-hire consumer report used by Defendant to make an employment decision; and (iii) against whom Defendant took an adverse action based in whole or in part on information contained in the consumer report.

*b.      Injunctive Relief Settlement Class.* The "Injunctive Relief Settlement Class" is defined to include:

All persons residing in the United States (including all territories and other political subdivisions of the United States) who during the period June 5, 2007 to the date of Preliminary Approval of this Settlement Agreement made application(s) for employment with Defendant.

The Damages Settlement Class is a subset of the Injunctive Relief Settlement Class.   The Damages Settlement Class will not include persons who timely Opt-out of that Class; however any Damages Settlement Class Member who timely Opt-outs remains a member of the Injunctive Relief Settlement Class.   Both classes also exclude (i) all judicial officers in the United States and their families through third degree of relationship; and (ii) all persons who have already settled or otherwise compromised their claims against Defendant.

> 2.   **Relief to the Classes**

> *a.*   ***Damages Settlement Class.***   The Parties have agreed that Winn-Dixie shall be responsible for payment, into a fund the sum of $385,000 (Three hundred and eighty-five thousand dollars) to be equally distributed among the members of the Damages Settlement Class, after the deduction of awarded attorneys' fees, costs and incentive awards.   Defendant's records show that the Damages Settlement Class consists of approximately 800 members, entitling each member to a net payment of approximately $330.00 (Three hundred and thirty dollars) from the Settlement.   The Settlement contemplates that Class Counsel will make an application to the Court for an award of attorneys' fees, costs and other expenses in an amount not to exceed Thirty Percent (30%) of the Common Fund.   Winn-Dixie is responsible to pay all notice and administrative costs, but may recoup $10,000 of this expense from any uncashed or undeliverable Common Fund distribution checks.

> *b.*   ***Injunctive Relief Settlement Class.***   Separate and apart from the relief for the Damages Settlement Class, the Parties have negotiated meaningful changes to the process and system used by Winn-Dixie to make the disclosures required by 15 U.S.C. §1681b(b)(2)(A)

4

before its accesses a consumer background check.   Winn-Dixie denies that its previous procedures were unlawful.  However, the entry of a consent order as negotiated will better ensure that Winn-Dixie provides these disclosures by imposing changes to its online application process.   These will permit class members and others who may apply for employment with Winn-Dixie in the future a more certain ability to obtain the FCRA disclosures required at §1681b(b)(2)(A) in writing.

As no monetary consideration is provided, none of the Injunctive Relief Settlement class members will release any of their substantive claims.   The only change in position for class members is a restriction on their ability to prosecute in the future by a class action a claim for a pre-settlement violation of §1681b(b)(2)(A).   The Settlement contemplates that Class Counsel will make an application to the Court for an award of attorneys' fees, costs and other expenses in an amount not to exceed $32,500.00.   Winn-Dixie is responsible to pay all notice and administrative costs, subject to the recoupment of unclaimed funds discussed above.

### 3.    Release of Claims

The Parties have agreed to language that the Damages Settlement Class Members shall release Defendant from claims arising from the facts alleged in the Complaint.   There is not a general release.

### 4.    Notice to the Class

The Parties have agreed to a notice program designed to reach as many Class Members as possible.   The Parties will provide direct-mail Notice to the Damages Settlement Class, postage prepaid First Class.   The names and addresses for that Notice came from the information provided by the class members when they completed employment applications. They will also be updated and checked against the United States Postal Service's National Change of Address

5

database.  In the event that a class member cannot be reached in this manner, the Parties will on a case by case basis evaluate the use of a further public records database search for an alternate address.

A copy of the Damages Settlement Class Notice will be filed in a supplemental filing within ten days of the filing of this Motion together with a proposed Preliminary Approval Order and other supporting documents.  The Settlement Notices will include a toll-free number and website address Class Members can consult to get additional information regarding the Settlement.  The Notice Administrator shall be responsible for maintaining the toll-free number and Internet website.  The Supreme Court has concluded that notice sent by first class mail to each class member satisfies due process.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985).

A copy of the Injunctive Relief Settlement Class will also be proposed contemporaneous with the filing of the Damages Settlement Class notice.  The Parties intend to provide such notice by means of advertisement of a nationally read newspaper and by Internet website.  Such notice method is regularly approved for Rule 23(e) settlement notice.  3 Newberg on Class Actions §8:34 (4th ed.).

The website operated by the Settlement Administrator will:  (1) enable Settlement Class Members to access and download the Class Notice; (2) enable Settlement Class Members to download an exclusion form, (3) provide a list of critical dates and deadlines in the settlement process; and (4) provide relevant updates and information with respect to the settlement and approval process.

Finally, Defendant has agreed to be solely responsible for making all payments necessary to effectuate sending of the Settlement Notices and associated costs, including maintenance of

US2008 1663174.1

the toll-free number and Internet website.  It will recoup only an amount not to exceed $10,000 and then only in the event that there is at least such amount in undistributed common fund proceeds.

5.      **Class Action Fairness Act Notice**

Defendant will cause notice of the proposed settlement to be served under the Class Action Fairness Act of 2005 ("CAFA").  28 U.S.C. § 1715.  The CAFA Notice will be sent via overnight courier to the Attorney General of the United States and to the attorneys general of all states and United States territories where Class Members reside.  The CAFA Notice will be sent within 10 days after the filing of the Settlement Agreement with the Court.

6.      **Incentive Awards and Attorneys' Fees and Expenses**

Plaintiffs will apply for incentive awards for Class Representatives to compensate them for their efforts in prosecuting this case including retaining counsel, assisting in discovery, and keeping abreast of the litigation.  Defendants agree not to oppose the application for the incentive awards, provided that the awards do not exceed $2,500 for each Class Representative.

In order to best represent the Class' interests, the parties exclusively focused on achieving a settlement and pointedly did not negotiate or even address the issue of attorneys' fees and expenses (or incentive awards) before reaching agreement on all material settlement terms. Accordingly, the Settlement Agreement and Release provides that:  (1) Class Counsel shall apply to the Court for an award of attorneys' fees and reimbursement of reasonable expenses, and (2) Class Counsel agree not to seek fees or costs in excess of the agreed-upon percentage of the common funds.

7

# III.
# AUTHORITIES

**A.    Preliminary Approval Standards**

Federal jurisprudence strongly favors resolution of class actions through settlement. *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999); *see* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Federal Rule of Civil Procedure 23 requires Court review of the resolution of a class action such as this one. Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during the settlement negotiations. *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 (S.D. W. Va. 2002) (citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)). The Court may approve a settlement only after a hearing and on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (quoting *S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991)).

Preliminary approval is the first of a two-step process for approval of a proposed class action settlement. In this first step, the court simply determines whether the proposed settlement falls within the range of possible approval and whether it is reasonable to issue notification to

8

class members of the settlement's terms.  In the second step, after notice to the class and an opportunity is provided for absent class members to object or otherwise be heard, the court must determine whether to grant final approval of the settlement as fair, reasonable and adequate, under the rules of civil procedure. *See Manual for Complex Litigation (Third)* § 30.41 (1995); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 11.25 (4th ed. 2002); *see also Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, *4 (S.D. Fla. 2007); *In Re Managed Care Litig.*, 2003 WL 22218324 (S.D. Fla. 2003); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540 (D. Colo. 1989), *appeal dismissed*, 936 F.2d 582 (10th Cir. 1991).

Preliminary approval of a proposed class action settlement does not involve a determination of the merits of the proposed settlement or affect the substantive rights of any class member. The purpose of preliminary approval is solely to communicate the proposed settlement to the class, to review and approve the proposed form of Notice to the class, and to authorize the manner and form of dissemination of the notice. *See Manual for Complex Litigation (Third)* § 30.41, at 236–37 (1995) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval, the court should direct that notice" issue and should schedule a final approval hearing). The proposed settlement clearly satisfies all of the factors required for preliminary approval under Rule 23.

Where, as here, the proposed settlement is the result of serious, arm's-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, and does not grant preferential treatment to the Representative Plaintiffs or other segments of the class, courts generally grant preliminary approval and direct that notice of a formal fairness hearing be given to class members. *See Williams Foods, Inc. v. Eastman Chemical Co.*, 2001-2

9

Trade Cases (CCH) ¶ 73,414, 2001 WL 1298887 (D. Kan. Aug. 8, 2001); *see also In re Minolta Camera Prods. Antitrust Litig.*, 668 F. Supp. 456, 459-60 (D. Md. 1987); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981).

Although not required at this stage, the settlement also meets the standard for final approval as being fair, reasonable and adequate under F.R.C.P. Rule 23(e)(1)(C), including the Eleventh Circuit's standard of being "fair, reasonable and adequate," and not the product of any collusion between the parties. *See Strube v. Am. Equity, Investment Life Ins. Co.,* 158 Fed. Appx. 198, 2005 WL 3160265 (11th Cir. Nov. 29, 2005); *Diaz v. Hillsborough County Hosp. Auth.,* 2000 WL 1682918 (M.D. Fla. Aug.7, 2000). While meeting the higher standard of being fair, reasonable and adequate—as opposed to meeting the standard of being within the range of fair, reasonable and adequate—is not required at this time, it is offered as informative.

For final approval, the court must examine the following factors when determining whether to approve a class action settlement:

> (1) the terms of the settlement compared to the likely rewards the class would have received following a successful trial of the case;
> (2) the complexity, expense, and duration of the litigation;
> (3) the judgment of experienced counsel for the parties;
> (4) the stage of the proceeding at which the settlement was achieved; and
> (5) the substance and amount of opposition to the settlement.

*Bragg v. Bill Heard Chevrolet, Inc.-Plant City*, 2007 WL 2781105, *2–3 (M.D. Fla. 2007)

(*citing Cotton v. Hinton,* 559 F.2d 1326, 1330–32 (5th Cir. 1977)).[1]

## B.   The Court Should Approve the Settlement Because It Meets the Fairness Requirement

The Parties agreed to settle only after conducting significant merits-related discovery and vigorously contesting the litigation. The Parties have also conducted extensive settlement talks,

---

[1] The substance and amount of opposition to the settlement can only be determined after notice has been accomplished. Thus, this factor is not analyzed herein.

US2008 1663174.1

including formal mediation.   The fact that the Parties have actively litigated the case and mediated on several occasions favors preliminary approval of the Proposed Settlement.   *See In re Micro Strategy, Inc.*, 148 F. Supp. 2d at 664 (approving of proposed settlement despite the fact that it was reached "early" in the litigation in part because the settlement came after the parties vigorously contested case).   During the discovery and mediation process, the parties exchanged detailed merits positions – Winn-Dixie providing the factual and legal challenge it intended for motions practice and Plaintiffs their response.   There was little uncertainty as to the position of the opposing party.

The Parties also reached the Proposed Settlement after sufficient and significant discovery had been completed, both formally and informally.   As noted above, the Parties exchanged sufficient information to allow a comprehensive evaluation of such discreet claims. Discovery of this magnitude and particularity also favors approval of the Settlement.   *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 830 (E.D.N.C. 1994); *see also* Manual for Complex Litigation, Fourth, at § 13.12 (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations). Informal discovery is a recognized method of minimizing the cost, delay, and burden associated with formal discovery. *See* Manual for Complex Litigation, Fourth, at § 11.423. Indeed, to further such ends, Courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery." *Id.*

There is absolutely nothing in this case to indicate that the Proposed Settlement resulted from anything other than contested, arm's-length negotiations between Plaintiffs and Defendants. The Parties did not begin to negotiate attorneys' fees before reaching the principal settlement

US2008 1663174.1

points.  Based on these facts, the Court should conclude the Proposed Settlement is fair.  *See S. Carolina Nat'l Bank*, 139 F.R.D. at 339 (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law).

Furthermore, experienced counsel negotiated the Settlement, making their first priority bringing the best benefit possible to the Classes.  Class Counsel has extensive experience in both FCRA and class action litigation, having been involved in several large national FCRA class actions.  *See* Declarations of Leonard A. Bennett and Janet R. Varnell.[2]  The Parties also engaged in formal and informal discovery, which was sufficient to aid Counsel and the Court in evaluating Plaintiffs' claims and Defendant's defenses.   These facts further point to the conclusion that the Proposed Settlement was the product of arm's-length negotiation by experienced counsel and thus warrants preliminary approval. "The former Fifth Circuit in *Cotton* stated that, in the 'absen[ce] of fraud, collusion or the like,' the court is 'entitled to rely upon the judgment of experienced counsel for the parties' and 'should be hesitant to substitute its own judgment for that of counsel.' *Bragg*, 2007 WL 2781105, at *3 (citing *Cotton*, 559 F.2d at 1330).

**C.**     **The Court Should Grant Preliminary Approval Because the Settlement is also Adequate.**

**1.**     **Plaintiffs' claims are heavily disputed**

Defendant has disputed Plaintiffs' claims since the inception of this case.  Because Plaintiffs limited the Class claims only to statutory and punitive damages, any recovery for the Class must be predicated on a finding that Defendants willfully violated the FCRA.  *See* 15

---

[2] The Declarations of Leonard A. Bennett and Janet R. Varnell will be submitted to the Court as part of the Supplemental Filing.

US2008 1663174.1

U.S.C. § 1681n(a). "To prove a willful violation, a consumer must prove that a consumer reporting agency either knowingly or recklessly violated the requirements of the Act. *Safeco*, 127 S.Ct. at 2208. To prove a reckless violation, a consumer must establish that the action of the agency "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009). Plaintiffs here are still faced with the burden of proving Defendants' conduct was indeed reckless. This burden is magnified by the fact that Plaintiffs' claims here would be sufficient to allow a recovery of statutory and punitive damages.

### 2. Continuing this litigation will result in significant additional and unjustifiable burdens on the class, Defendant and the Court.

Aside from the potential that either side will lose at trial, the Parties anticipate incurring substantial additional costs in pursuing this litigation further. The level of additional costs would significantly increase as Plaintiffs began their preparations for the certification argument and if successful an inevitable interlocutory appeal attempt. Thus, the likelihood of substantial future costs favors approving the Proposed Settlement. *Horton*, 855 F. Supp. at 833.

### 3. Class Member reaction to the Settlement is not available at this time

Because Class Members have yet to receive notice of the Proposed Settlement, their reaction cannot yet be gauged. However, to date no consumer has filed or is pursuing his or her own individual claim for the targeted FCRA violations.

US2008 1663174.1

## IV.
## CONCLUSION

The Parties have reached a Settlement in this case that provides genuine relief to Class Members.  The Settlement is an excellent result considering the contentiousness of the litigation and the novelty of Plaintiffs' claims.  Each Class Member who would release a substantive claim will receive a check by first class mail as a result of the Settlement, regardless of whether they were aware Winn-Dixie's conduct potentially violated the FCRA or whether they suffered actual harm.   In addition, the terms of the Settlement as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal satisfy the all strictures for preliminary approval.

Accordingly, the Parties ask the Court for an Order, substantially similar to the Proposed Order filed concurrently with this Motion, that:

(1)     Grants preliminary approval to the Proposed Settlement;

(2)     Approves of the Proposed Notices in the Parties' supplemental filing;

(3)     Orders that the Proposed Notices be immediately mailed and published to Class Members;

(4)     Approves the appointment of Notice Administrator; and

(5)     Sets the date of the Final Fairness Hearing at the Court's earliest availability.

US2008 1663174.1

Dated:  October 12, 2010.                    **FOR PLAINTIFFS AND THE CLASS**

/s/ Janet R. Varnell
**JANET R. VARNELL**
Florida Bar No. 0071072
**BRIAN W. WARWICK**
Florida Bar No.:  0605573
VARNELL & WARWICK, P.A.
20 La Grande Boulevard
The Villages, Florida  32159
Tel:  352-753-8600
Fax:  352-753-8606
JVarnell@VarnellandWarwick.com

**CHRISTOPHER COLT NORTH**
The Consumer & Employee Rights Law Firm, P.C.
715-A Thimble Shoals Boulevard
Newport News, Virginia  23606
cnorthlaw@aol.com

**LEONARD A. BENNETT**
12515 Warwick Boulevard
Newport News, Virginia  23606
lenbennett@clalegal.com

US2008 1663174.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed with the U.S. District Court's CM/ECF System and that pursuant thereto a copy of this pleading has been served upon the following by electronic mail this 12th day of October, 2010:

**CHRISTOPHER COLT NORTH**
cnorthlaw@aol.com
The Consumer & Employee Rights Law Firm, P.C.
715-A Thimble Shoals Boulevard
Newport News, Virginia  23606
*Counsel for Plaintiffs and the Class*

**LEONARD A. BENNETT**
lenbennett@clalegal.com
12515 Warwick Boulevard
Newport News, Virginia  23606
*Counsel for Plaintiffs and the Class*

**BRADLEY R. JOHNSON**
brj@tdclaw.com
**LATASHA GARRISON-FULLWOOD**
lgf@tdclaw.com
**TAYLOR, DAY, CURRIE, BOYD & JOHNSON, P.A.**
50 North Laura Street Suite 3500
Jacksonville, Florida  32202
*Counsel for Defendant*

CRAIG E. BERTSCHI
cbertschi@kilpatrickstockton.com
CINDY D. HANSON, ESQ.
chanson@kilpatrickstockton.com
ANGELA FRAZIER, ESQ.
afrazier@kilpatrickstockton.com
**KILPATRICK STOCKTON, LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530

*Counsel for Defendant*

/s/ Janet R. Varnell
JANET R. VARNELL

16

US2008 1663174.1