UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PAUL BLACK and
DANIEL ALLEN JOHNSON,
on behalf of themselves and all other
similarly situated individuals,

                              CLASS REPRESENTATION
                              Case No. 3:09-cv-00502-TJC-JRK

    **Plaintiffs,**
v.
WINN-DIXIE STORES, INC,
a Florida Corporation,
    **Defendant.**
_____/

### CLASS COUNSELS' MOTION FOR ATTORNEYS' FEES AND COSTS AND FOR INCENTIVE AWARD

On January 26, 2011, the Court preliminarily approved the parties' proposed settlement which would create a common fund of $385,000 to pay monetary damages to approximately 800 members of the "Damages Settlement Class" under the proposed settlement. (Preliminary Approval Order, Docket No. 45). The Settlement Agreement also provides meaningful injunctive relief to protect consumers who apply to Winn-Dixie for a new job or a promotion in the future. Now, Class Counsel requests an Order from this Court awarding attorneys' fees, costs and incentive awards that were negotiated after the remaining terms of settlement were reached.

The Parties will separately and timely file their memoranda in support of the fairness and adequacy of the settlement. However, it should be apparent that the relief obtained for the class is substantial. For the Damages class, each class member will receive a cash settlement of approximately $330.00 without any claims process. For the Injunctive Relief class, substantial changes are made to Winn-Dixie's Fair Credit Reporting Act ("FCRA") disclosure process to enable future class members (and others) to obtain and understand their background check rights in future employment applications.

To obtain this outcome for the class, Plaintiffs' counsel incurred significant attorney fees including hours, costs, law office resources, pre-filing investigation, drafting, written discovery and settlement negotiations. During the discovery process, Plaintiffs discovered and learned that the class size was substantially smaller than originally contemplated. This presented a greater incentive to all parties to resolve the matter earlier rather than later.

Despite the significant benefits provided to the class, the actual attorneys fee sought in this case is modest. As to the Damages Class, Class Counsel requests a fee based solely on the monetary benefit obtained for the Class. Candidly, had the class size been significantly larger, the fee request would have been proportionately so. However, under the present circumstances, the actual fee

requested is less than actual lodestar. In other words, Class Counsel in this matter are not even going to recoup their time in the case.

### A. The Fee Requested Satisfies Applicable Legal Standards and is Fair and Reasonable under the Circumstances.

The Supreme Court, the Eleventh Circuit, and Florida courts have all noted that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. *See* Boeing Co. v. Van Gemert, 100 S. Ct. 745 (1980); *see also* Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 771 (11th Cir. 1991) ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). This doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from plaintiffs' efforts." In re Gould Sec. Litig. 727 F. Supp. 1201 (N.D. Ill. 1989).

In applying this principle, courts have recognized that appropriate awards of attorneys' fees in cases such as this promotes sound public policy, encourages the pursuit of redress for wrongs caused to entire classes of persons, and discourages future misconduct of a similar nature:

> Courts... have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce,... laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.

Mashburn v. National Healthcare, Inc., 684 F. Supp. 679, 687 (M.D. Ala. 1988).

In light of these considerations, in Camden I, the Eleventh Circuit held that "the percentage of fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth, attorney fees awarded from a common fund in this Circuit shall be based upon a reasonable percentage of the fund established for the benefit of the class." Camden I, 946 F. 2d at 774.

"There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." Camden I, 946 F. 2d at 774. Nevertheless, as a general statement, "[t]he majority of common fund fee awards fall between 20% to 30% of the fund," although "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." Id. at 774-75. The Eleventh Circuit has stated that "district courts are beginning to view the median of this 20% to 30% range, i.e., 25% as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case ..." Id. at 775. In Waters v. International

4

Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999), the Eleventh Circuit again affirmed a fee award of 33% of the common fund based on the district court's upward adjustment from what it determined to be an appropriate benchmark of 30%.

The Eleventh Circuit has listed the factors by which a trial court should evaluate the circumstances of each case to determine the reasonableness of the percentage awarded to class counsel as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

Camden I, 946 F.2d at 772 n.3. These factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." Camden I, 946 F.2d at 775.

As demonstrated below, consideration of all relevant factors readily supports a 30% award of attorney fees. Cf. Waters, 190 F.3d at 1294 (affirming award of 33%). This Court should not hesitate to award the requested fee.

**B.   The *"Camden I Factors"* Support the Requested Fee.**

**1.   Time and Labor Required.**

This case was brought after substantial investigation of the claims, and was litigated intensively before the proposed settlement was reached. Plaintiffs' Counsel reviewed documents produced by the parties as well as publicly available documents, researched a number of important and dispositive novel issues, advised and worked with six different clients and answered as well as accomplished necessary written discovery. All told, Plaintiffs' Counsel collectively expended approximately 347.5 hours litigating all aspects of this case. These hours were modest, relative to the challenges faced in the case and the quality and resources of the opposition.

**2.   The Novelty and Difficulty of the Questions Involved.**

This case was, by any measure, complex and involved difficult and sometimes novel issues of law. As a substantive matter, the case required knowledge and application of both the Fair Credit Reporting Act and the Electronic Signatures in Global and National Commerce Act. And of course it required experience and skill in class action and complex litigation.

### 3. The Skill Requisite to Litigate a Class Action Properly; The Experience, Reputation and Ability of the Attorneys.

Class Counsel respectfully submits that – as reflected in their accompanying Declarations - they are extremely well qualified in their experience, reputations and abilities. Here, the competence and experience of Plaintiffs' Counsel in class actions such as this was a significant factor in obtaining the results achieved for the Class.

The outcome required not only that the skill of counsel be commensurate with the novelty and complexity of the issues in the case, but also that it be commensurate with the skill of opposing counsel. *See* Walco Inv. Inc. v. Thenen, 975 F. Supp. 1465, 1472 (S.D. Fla. 1997) ("Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results.").

In assessing the quality of representation by Plaintiffs' Counsel, the Court should consider the quality of the opposition. *See, e.g.*, Camden I, 946 F.2d at 772 n.3; Johnson, 488 F.2d at 718. The Defendants in this case were represented by a top-tier law firm, Kilpatrick, Townsend & Stockton LLP. Indeed, Defense counsel themselves are one of the few litigation teams with experience and success opposing FCRA class action claims. The quality and resources of this opposition, both individually and collectively, presented a formidable challenge, and

7

demanded constantly rigorous advocacy from Plaintiffs' Counsel. This consideration likewise supports an upward adjustment.

### 4. The Preclusion from Other Employment by the Attorneys.

This factor is reflected in the actual hours incurred by Plaintiffs' counsel – given the limited lodestar they herein request. Certainly each hour of work performed is an hour not otherwise available for alternate litigation. The three law firms representing the class in this matter each were prevented from pursuing other litigation because of commitments to this case.

### 5. The Customary Fee; Awards in Similar Cases.

Class Counsel requests that the Court award them a fee which represents 30% of the Settlement Fund created as a result of their efforts. The law is well established that such a fee award is well within the range of what may be considered customary. *See, e.g.*, Waters, 190 F.3d. at 1294. In fact, many recent decisions in this Circuit have routinely awarded attorneys' fees equivalent to 30% or more of the common fund. *See* Waters, 190 F.3d at 1295 (affirming award of 331/3% of common fund); Diaz v. Hillsborough County Hosp. Authority, 2000 WL 1682918 (M.D. Fla. Aug. 7, 2000) (30% of the common fund); Ressler v. Jacobson, 149 F.R.D. 654 (M.D. Fla. 1992) (30% of the common fund).[1]

---

[1] *See also* In re Terazosin Hydrachlride Antitrust Litig., 99-1317-MDL-Seitz (S.D. Fla. Apr. 19, 2005) (331/3%); Gutter v. E.I. Dupont De Nemours & Co., 95-2152-Civ-Gold (S.D. Fla. May 30, 2003) (331/3%); Sands Point Partners, LP v.

8

It is also significant that the amount sought for attorney fees comports with the standard contingent fee amounts found in the marketplace. See, e.g., In re Continental Illinois Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorneys' fee ... is to simulate the market. The requested fee is consistent with practice in the private marketplace where contingent fee arrangements ranging from 30% to 40% are customary.") See Kirchoff, 786 F.2d at 323, 325 n.5 ("40% is the customary fee in tort litigation"); In re Public Service Co., Fed. Sec. L. Re. (CCH) 96,988 at 94, 291-92 (S.D. Cal. 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent on a percentage basis, and in the range of 30% to 40% of the recovery.").

### 6. Whether the Fee is Fixed or Contingent

"A contingency fee arrangement often justifies an increase in the award of attorneys' fees." In re Sunbeam Secs. Litig., 176 F. Supp. 2d 1323, 1335; *see also* In re Continental Illinois Sec. Litig., 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs'

---

Pediatrix Med. Group, Inc., 2002 WL 3434944 (S.D. Fla. May 3, 2002) (33 1/3%); Tapken v. Brown, *Case No.* 90-0691-Civ-Marcus (S.D. Fla. 1995) (33%); In re In'l Recovery Corp. Sec. Litig., Case No. 92-1474-Civ-Atkins (S.D. Fla. 1994) (30% class benefit); In re Sound Advice, Inc. Sec. Litig., Case No. 92-6457-CIV-Ungaro-Benages (S.D. Fla. 1994) (30%); In re Belmac Corp. Sec. Litig., Case No. 92-1814-Civ-T-23-(C) (M.D. Fla. 1994) (31%); In re Perfumania, Inc. Sec. Litig., Case No. 92-1490-Civ-Marcus (S.D. Fla. 1993) (30%); Kaser v. Swann, Case No. 90-607-Civ-Orl-3A18 (M.D. Fla. 1993) (30%); In re Home Shopping Network Sec. Litig., Case No. 87-428-T-13(A) (M.D. Fla. 1991) (33%).

counsel must be compensated adequately for the risk of non-payment); <u>Ressler</u>, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."). As one District Court has explained:

> A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

<u>Behrens v. Wometco Enters., Inc.</u>, 118 F.R.D. 534, 548 (S.D. Fla. 1988).

This action was prosecuted by Class Counsel on a purely contingent basis, thereby assuming the risk of not being paid for a considerable amount of work over an extended period of time and the risk of absorbing the substantial litigation costs involved in this case. The case was highly-risky, was waged against strong opponents with substantial resources who contested the case vigorously, and presented potential legal pitfalls that could have resulted in no recovery at all. Plaintiffs' Counsel faced the risk of expending all out-of-pocket litigation costs and hours of attorney time without compensation. Thus, the contingency risk in this case was large and warrants an appropriate fee.

### 7. The Amount Involved and the Results Obtained.

Class Counsel negotiated a Settlement with the Settling Parties that will pay class members $385,000.00 plus an additional $32,500 in fees. The settlement is

not a claims made process but rather delivers an actual check to class members and represents one of the strongest per class member recoveries in FCRA history. This outcome would not have been obtainable but for Plaintiffs' Counsel's work and effort. In short, the Settlement represents an excellent result.

### C. The Reaction of the Class Members Strongly Supports the Requested Fee.

Notices were sent to all Class Members. However, to date not a single one has sent a notice of his or her intent to opt out of the Settlement or object to any of its terms. While perhaps not a first in the annals of class action litigation, this is still a remarkable result. Plaintiffs' Counsel submit that this factor speaks volumes about the merits of the Settlement, the quality of their work, and the reasonableness of the requested fee award.

### D. The Requested Fee is also Reasonable When Checked Against the "Lodestar" Approach.

Some courts also use the lodestar method as a cross-check of the percentage of the fund approach. *See* Ressler, 149 F.R.D. at 653 n. 4. As another Court has noted, however, "this cross-check is not to be used as a backdoor avenue of using the lodestar method instead of the percentage of the fund method." Sunbeam, 176 F. Supp. 2d at 1336. Here, Plaintiffs' Counsel's fee request is extremely reasonable when considered under the lodestar approach.

Under a lodestar approach, this case would undoubtedly justify a substantial enhancement, which is typically applied in recognition of consideration such as risk and the contingent nature of the fees, the magnitude and complexity of the litigation, the quality of the attorneys' performance, the benefits achieved, as well as the social and economic value of encouraging counsel to undertake matters that serve the public interest. In a pre-Camden I case in the Southern District, Judge King performed both methods of analysis and gathered cases on the range of fee awards under either method and noted that lodestar multiplies "in large and complicated class actions" range from 2.26 to 4.5, while "most lodestar multipliers awarded in cases like this are between 3 and 4." Behrens, 118 F.R.D. at 549. A study based on empirical data has shown the average lodestar multiplier to be 3.89. *See* Stuart J. Lopgan et al., *Attorney Fee Awards in Common fund Class Actions*, 24 CLASS ACTION REP. 169 (2003). In many cases, including in this jurisdiction, much higher multiples have been approved. *See* Weiss v. Mercedes-Benz of North America, Inc., 1995 U.S. Dist. LEXIS 14708 (D.N.J. 1995) (multiple of 9.3); In re RJR Nabisco, Inc. Sec. Litig., Fed. Sec. L. Rep. (CCH) ¶ 96,984 (S.D.N.Y. 1992) (multiplier of 6); Cosgrove v. Sullivan, 759 F. Supp. 166 (S.D.N.Y. 1991) (multiplier of 8.74); Grimshaw v. New York Life Ins. Co., Case No. 96-0746-Civ-Nesbit (S.D. Fla. 1996) (multiplier of 8.5); Roberts v. Texaco, Inc., 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (multiplier of 5.5).

However, in this case, Plaintiffs' counsel committed to request a fee as to the Damages class solely based on the monetary result obtained. As regards the Injunctive relief settlement, Plaintiffs' counsel negotiated the results – significant practice changes with no release of individual claims – and thereafter negotiated the additional injunctive relief specific attorneys fee. The fee negotiated was based on the amount of time estimated as having been incurred solely towards this result. Together, the full attorneys' fee, calculated at each firm's regular hourly rates is $134,737. *See* Declaration of Janet Varnell ($31,087); Declaration of Leonard A. Bennett ($52,650); Declaration of Christopher C. North ($51,000) (attached as Exhibits 1, 2, and 3). If the Court awards Plaintiffs' Counsel the requested fee award of 30% of the Damages Settlement Payment, less litigation costs ($10,201.15) and requested incentive awards ($2,500 per named plaintiff), then the fees would fail to even reimburse class counsel for their regular hourly rates and represent no multiplier whatsoever.

E.   **The Injunctive Relief Attorneys Fees are Reasonable.**

Courts generally encourage fee agreements between plaintiffs and defendants in class actions that, like this one, are negotiated at arm's-length: "[i]n cases of this kind [class actions], we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." Johnson v. Georgia Highway Express, Inc., 488

F.2d 714, 720 (5th Cir. 1974). This maxim applies with even greater force in this case. Unlike common fund analysis, here, a decision to reduce the negotiated fee would not result in any additional benefit to the class, as Winn-Dixie has agreed to pay the fee separately from the class recovery. Because the fee will be paid separately from the settlement benefit, Defendant had a particular incentive to keep the fee as low as possible. *See* Elkins v. Equitable Ins. Co. of Iowa, No. 96-296, 1998 U.S. Dist. LEXIS 1557, *99 (M.D. Fla. 1998) (observing that where fee will not be deducted from a fixed fund, the defendant "had a particular incentive to bargain strenuously to keep the fee as low as possible."). Under these circumstances, the Court gives "great eight" to the negotiated fee in considering the fee request. Id. The Court sees no reason, and none has been presented, to reduce the amount of fees and incentives negotiated by the parties.

Attorneys' fees and costs may be recovered "in the case of any successful action to enforce any liability under" the FCRA. 15 U.S.C. §§ 1681n (a) (3), 1681o(a)(3). Though the statute does not define more precisely what it means for a party to be "successful," courts applying this provision have relied on the two-part test established by the Supreme Court in Buckhannon for determining whether a party is entitled to fees as a "prevailing" party. *See* Nagle v. Experian Info. Solutions, Inc., 297 F.3d 1305, 1307 (11th Cir. 2002); Crabill v. Trans Union, L.L.C., 259 F.3d 662, 666-67 (7th Cir. 2001). Under this standard, a plaintiff may

14

recover fees where: (1) she achieves a material alteration of the legal relationship between the parties that benefits her; and (2) such alteration is "judicially sanctioned." Buckhannon Bd. & Care Home Inc. v. West Virginia Dept. of Health & Human Res., 532 U.S. 598, 604-05 (2001); Nagle, 297 F.3d at 1307.

Though some "judicial imprimatur" – such as the negotiated injunctive relief order - is required to recover fees under the *Buckhannon* standard, a final judgment on the merits is not required. *See* Carbonnel v. INS, 429 F.3d 894, 898-99 (9th Cir. 2005). Indeed, courts have repeatedly found plaintiffs to be entitled to fees under Buckhannon where, as here, the parties enter into a judicially-enforceable settlement agreement. *See, e.g.,* Richard S. v. Dept. of Developmental Servs., 317 F.3d 1080, 1087 (9th Cir. 2003) (noting the judicial imprimatur on a settlement that "materially altered the legal relationship between the parties, because the defendants were required to do something directly benefiting the plaintiffs that they would not otherwise have had to do").

Moreover, as noted above, while the beneficiaries of the Injunctive Relief Settlement will include members of the proposed Damages settlement class, the two classes are not co-extensive, and the greatest benefit of the injunctive relief provided by the Settlement may be to the as-yet unknown of consumers for whom relief will be important in the future.

### F. Litigation Expenses.

Plaintiffs' Counsel also seek reimbursement of litigation-related expenses in the amount of $10,201.15. These expenses were incurred for mediation, travel, Westlaw, federal express and various additional expenses all actually incurred and paid to third parties.

### G. Class Representatives' Incentive Awards.

Finally, Plaintiffs' Counsel also seek the Court's permission to pay incentive awards to the Class Representatives in this action. Pursuant to the terms of the Settlement, the Released Parties agreed that Plaintiffs' Counsel may make an application to the Court for an award to class representatives of $2,500, as class representative awards, to be paid out of, and at the time of the disbursement of, the Settlement Payment. Each of these Class Representatives has been actively involved in the litigation, having provided their Rule 26 Initial Disclosures to the Defendants, formally responded to discovery requests served upon them, and have fully cooperated with every request made of them.

Courts routinely award "service" or "incentive" fees to named plaintiffs in class actions. For example, the Ninth Circuit has recognized that rewarding class representatives for their participation is commonplace, having "approved incentive awards of $5,000 each to the two class representatives of 5,400 potential class members in a settlement of $1.725 million." Staton v. Boeing Co., 327 F.3d 938,

976-77 (9th Cir. 2003). In <u>Staton</u>, the court also referenced three cases in which the service fees ranged from $2,000 to $5,000. *See* <u>Id.</u>; *see also* <u>In re U.S. Bancorp Litig.</u>, 291 F.3d 1035, 1038 (8th Cir. 2002); <u>Cook v. Niedert</u>, 142 F.3d 1004, 1016 (7th Cir. 1998); <u>In re SmithKline Beckman Corp. Sec. Litig.</u>, 751 F. Supp. 525, 535 (E.D. Pa. 1990). The Notice provided to the Class Members in this case fully described the proposed incentive awards to the class representatives, and no objection has been received on this point. The Court should award the unopposed service fees in this case.

In sum, Plaintiffs' Counsel respectfully submit that they have achieved a superior result and merit the requested award of fees and expenses. Plaintiffs' Counsel's 30% fee request is fair and reasonable and easily satisfied the guidelines of <u>Camden I</u>, especially in light of the complicated nature of the case; the obstacles presented; the tremendous amount of time, effort and skill required to create the common fund; and the excellent results obtained. Plaintiffs' Counsel have brought this case at the risk of not being compensated, against significant odds, and have produced substantial benefits to the Settlement Classes. For these reasons, Plaintiffs' Counsel respectfully request that the Court grant their motion for fees and expenses.

## CONCLUSION

Plaintiffs and the Plaintiffs' Counsel respectfully ask the Court to grant their motion and enter an undivided award of attorneys' fees in the amount of 30% of the Damages Settlement Payment (that is, $115,500) and a simple lodestar recovery of $32,500 for the successful Injunctive Relief count, separating out a reimbursement of expenses from the fee award in the total amount of $10,201.15 and incentive awards totaling $5,000.

DATED: April 1, 2011.  FOR PLAINTIFFS AND THE CLASS

/s/ Janet R. Varnell
JANET R. VARNELL
Florida Bar No. 0071072
BRIAN W. WARWICK
**VARNELL & WARWICK, P.A.**
20 La Grande Boulevard
The Villages, Florida 32159
Tel: 352-753-8600
Fax: 352-753-8606
JVarnell@VarnellandWarwick.com

**LEONARD A. BENNETT**
12515 Warwick Boulevard
Newport News, Virginia 23606
lenbennett@clalegal.com

**CHRISTOPHER COLT NORTH**
The Consumer & Employee Rights Law Firm, P.C.
715-A Thimble Shoals Boulevard
Newport News, Virginia 23606
cnorthlaw@aol.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed with the U.S. District Court's CM/ECF System and that pursuant thereto a copy of this pleading has been served upon the following by electronic mail this 1st day of April, 2011:

Craig E. Bertschi cbertschi@kilpatricktownsend.com
Cindy D. Hanson chanson@kilpatricktownsend.com
Angela N. Frazier anfrazier@kilpatricktownsend.com
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street
Suite 2800
Atlanta, GA  30309-4530

Bradley R. Johnson
BRJ@tdclaw.com
Latasha Garrison-Fullwood
lfullwood@tdclaw.com
**TAYLOR, DAY, CURRIE, BOYD & JOHNSON, P.A.**
50 North Laura Street Suite 3500
Jacksonville, Florida  32202

Christopher Colt North
cnorthlaw@aol.com
**THE CONSUMER AND EMPLOYEE RIGHTS LAW FIRM, P.C.**
751-A Thimble Shoals Boulevard
Newport News, VA  23606

Leonard A. Bennett
lenbennett@clalegal.com
**CONSUMER LITIGATION ASSOCIATES, PC**
12515 Warwick Boulevard
Suite 100
Newport News, VA  23606

        s/ Janet R. Varnell
        JANET R. VARNELL